## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **LEE WIGOD**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | |
| **THS GROUP, LLC**, d/b/a **TOTAL HOME PROTECTION**, a Pennsylvania limited liability company, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

1.      Plaintiff Lee Wigod ("Wigod" or "Plaintiff") brings this Class Action Complaint against Defendant THS Group, LLC d/b/a Total Home Protection ("THP" or "Defendant") to stop Defendant's practice of sending unsolicited text messages to cellular telephone users, even after the users request for such messages to "Stop," and to obtain redress for all persons injured by Defendant's conduct. Plaintiff also seeks an award of statutory damages to the members of the Classes plus court costs and reasonable attorneys' fees.

2.      Plaintiff, for his complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

3.      Plaintiff Lee Wigod is a natural person and a resident of Cook County, Illinois.

4.      Defendant THS Group, LLC d/b/a Total Home Protection is a limited liability company organized in and existing under the laws of the State of Pennsylvania, with its principal place of business located at 300 McGaw Drive, 2nd Floor, Edison, New Jersey 08837. Defendant conducts business throughout this District, the State of Illinois, and the United States.

1

**JURISDICTION & VENUE**

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*, a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consist of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

6.     This Court has personal jurisdiction over THP because it conducts a significant amount of business in this District, made and continues to make unsolicited text message calls to persons located within this District, and because the wrongful conduct giving rise to this Complaint occurred in and was directed to this District.

7.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**COMMON FACTUAL ALLEGATIONS**

8.     Defendant THP is a home warranty company that offers service contracts to cover repair or replacement of household appliances. On information and belief, THP offers its service contracts to consumers across the United States, including Illinois, and its website notes only California and Iowa as states in which its contracts are not available.[1]

9.      Unfortunately for consumers, THP casts its marketing net too wide. In an attempt to promote its business and to generate leads for its service contracts, which it calls "home warranty plans," Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly sends unsolicited text messages to consumers, even after the consumers reply "STOP" in an attempt to opt out of such messages.

---

[1] *See* https://totalhomeprotectionquote.com/.

2

10.     At all times material to this Complaint, Defendant was and remains fully aware that unsolicited telemarketing text messages are being made to consumers' cellular telephones through its own efforts and through the efforts of its agents. Defendant was also aware that messages were being sent after consumers had responded "STOP".

11.     Defendant's text messaging system, including without limitation its use of a shortcode, is an automatic telephone dialing system ("ATDS") in that it has the capacity to store and dial random numbers, *en masse*, without human intervention. The messages in this case were not transmitted individually—Defendant or its agents caused the text messages to be sent in an automated fashion using such equipment to the entire Classes defined below.

12.     The text message calls were for telemarketing purposes and offered or announced the availability of goods or services, specifically deals and discounts on Defendant's service contracts.

13.     The text message calls were made by or on behalf of Defendant, with Defendant's knowledge and approval. Defendant has knowingly received the benefit of the text message calls and has ratified the making of such calls.

14.     Defendant knowingly made, and continues to make, unsolicited telemarketing text messages without the consent of the recipients and knowingly continued to send messages after requests to "Stop." In doing so, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, it also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF

15.     Plaintiff Wigod is the subscriber to and customary user of the personal cellular telephone number ending in 2826.

16.     Plaintiff Wigod registered his cellphone number on the National Do Not Call Registry on or about July 27, 2005.

17.     On October 30, 2019, at 11:17AM, Plaintiff received an unsolicited text message on his cellphone, last four digits 2826, from Defendant using SMS shortcode 945-52. The

October 30, 2019 text message read: "Hey, HALLOWEEN SALE on Home Warranty plans! Best rates of 2019 + 2 MONTHS FREE. Cover all major appliances. Call Now! 844-537-6476. STOP to end. Help for Help."

18.     On November 8, 2019, at 9:12AM, Plaintiff received another unsolicited text message on his cellphone from Defendant using SMS shortcode 945-52. The November 8, 2019 text message read: "Friday is here! Get 35% OFF ALL HOME WARRANTY PLANS + 2 FREE MONTH! Call 844-537-6476 today only. Cover A/C, Heat, Appliance & More! STOP to end. Help for Help."

19.     On November 8, 2019, at 10:44PM, Plaintiff replied "STOP," according to the message's instructions.

20.     Despite requesting "STOP" as instructed, on November 11, 2019, at 9:31AM, Plaintiff received another unsolicited text message from Defendant using SMS shortcode 945-52. The November 11, 2019 text message read: "Veterans Day Sale - $200 OFF ALL HOME WARRANTY PLANS + 2 FREE MONTH - Cover A/C, Heating, Appliances & More! Call 844-537-6476. STOP to end. Help for Help."

21.     The next day, on November 12, 2019, at 9:31AM, Plaintiff received yet another unsolicited text message from Defendant using SMS shortcode 945-52. The November 12, 2019 text message read: "VETERANS DAY DISCOUNT ON ALL HOME WARRANTIES - UP TO 35% OFF + 2 FREE MONTH. Call 844-537-6476. Cover A/C, Heat, Appliance & More! STOP to end. Help for Help."

22.     Once again, Plaintiff replied "STOP" per the instructions contained in the messages.

23.     On November 14, 2019, at 10:01AM, Plaintiff received another unsolicited text message from Defendant using SMS shortcode 945-52. The November 14, 2019 text message read: "Home Warranty SUPER SALE - UP TO $200 OFF ANY HOME WARRANTY PLAN + 2 MONTH FREE! 844-537-6476. STOP to end. Help for Help."

24.     Plaintiff again replied "STOP" according to the instructions.

25.     Despite this, on November 19, 2019, at 12:06AM, Plaintiff received another unsolicited text message from Defendant using SMS shortcode 945-52. The November 19, 2019 text message read: "Home Warranty SUPER BLACK FRIDAY PRE-SALE - UP TO 30% OFF any home warranty plan + 2 months free! Call 844-537-6476. STOP to end. Help for Help."

26.     Plaintiff again replied "STOP" according to the instructions.

27.     On November 20, 2019, at 12:01PM, Plaintiff received another unsolicited text message from Defendant using SMS shortcode 945-52. The November 20, 2019 text message read: "Home Warranty Super Sale - $200 OFF ALL HOME WARRANTY PLANS + 2 MONTHS FREE. Cover A/C, Heat, Appliance & More! Call 844-537-6476. STOP to end. Help for Help."

28.     On November 21, 2019, at 12:01PM, Plaintiff received another unsolicited text message from Defendant using SMS shortcode 945-52. The November 21, 2019 text message read: "Never pay for covered home repairs again! UP TO 35% OFF HOME WARRANTY PLANS. Cover your Heat, Appliances & More! Call 844-537-6476. STOP to end. Help for Help."

29.     Plaintiff again replied "STOP" according to the message's instructions.

30.     Shortly thereafter, Plaintiff received a message in reply that read "THP: You have successfully opted out. You will not receive messages from Total Home Protection. THP HELP for Help."

31.     Despite Plaintiff's *five* "STOP" requests and THP's opt-out confirmation message, Plaintiff received another unsolicited text message from THP on November 30, 2019, at 9:30AM, using SMS shortcode 945-52. The November 30, 2019 text message read: "BLACK FRIDAY SALE! Lowest Rates of 2019 on ALL HOME WARRANTY PLANS. Call 844-537-6476 or http://bit.ly/2KUyjXy. STOP to end. Help for Help."

32.     On December 2, 2019, at 10:42AM, Plaintiff received another unsolicited text message from Defendant using SMS shortcode 945-52. The December 2, 2019 text message read: "CYBER MONDAY SALE! Lowest Rates of 2019. $200 OFF ALL HOME WARRANTY PLANS + 2 MONTHS FREE. Call 844-537-6476. STOP to end. Help for Help."

33.     Plaintiff again replied "STOP" according to the message's instructions.

34.     Shortly thereafter, Plaintiff received a another opt-out confirmation message that read: "THP: You have successfully opted out. You will not receive messages from Total Home Protection. THP HELP for Help."

35.     Despite *six* "STOP" requests sent by Plaintiff and two opt-out confirmation messages from THP, Plaintiff received two more unsolicited text messages from Defendant on January 9, 2020, at 12:04PM, using SMS shortcode 945-52. The first January 9, 2020 text message read: "Never pay for covered home repairs again! SAVE UP TO 45% OFF THP HOME WARRANTY PLANS. Call 866-896-2715. Reply STOP to end or HELP for help." The second message, sent shortly after, removed the word "THP" and changed the phone number to 844-537-6476.

36.     Plaintiff replied "STOP" on January 9, 2020, at 3:35PM, and he received a third automatic confirmation message that read "THP: You have successfully opted out. You will not receive messages from Total Home Protection. THP HELP for Help."

37.     Screenshots of the text messages are reproduced below:



**2:42**   LTE

20

945-52

Text Message
Wed, Oct 30, 11:17 AM

Hey, HALLOWEEN SALE on Home Warranty plans! Best rates of 2019 + 2 MONTHS FREE. Cover all major appliances. Call Now! 844-537-6476. STOP to end. Help for Help

Fri, Nov 8, 9:12 AM

Friday is here! Get 35% OFF ALL HOME WARRANTY PLANS + 2 FREE MONTH! Call 844-537-6476 today only. Cover A/C, Heat, Appliances & More! STOP to end. Help for Help

Fri, Nov 8, 10:44 PM

STOP

Mon, Nov 11, 9:31 AM



Text Message



**2:42**     LTE

**< 20**     945-52     (i)

Fri, Nov 8, 10:44 PM

STOP

Mon, Nov 11, 9:31 AM

Veterans Day Sale – $200 OFF ALL HOME WARRANTY PLANS + 2 FREE MONTH – Cover A/C, Heating, Appliances & More! Call 844-537-6476. STOP to end. Help for Help

Tue, Nov 12, 9:31 AM

VETERANS DAY DISCOUNT ON ALL HOME WARRANTIES – UP TO 35% OFF + 2 FREE MONTH. Call 844-537-6476. Cover A/C, Heat, Appliances & More! STOP to end. Help for Help

STOP

Thu, Nov 14, 10:01 AM

Text Message





2:43  ᴨ LTE 🔋

‹ 20  945-52  ⓘ

STOP to end. Help for Help

STOP

Wed, Nov 20, 12:01 PM

Home Warranty Super Sale
- $200 OFF ALL HOME
WARRANTY PLANS + 2
MONTHS FREE. Cover A/C,
Heat, Appliances & More!
Call 844-537-6476. STOP
to end. Help for Help

Thu, Nov 21, 12:01 PM

Never pay for covered home
repairs again! UP TO 35%
OFF HOME WARRANTY
PLANS. Cover your Heat,
Appliances & More! Call
844-537-6476. STOP to
end. Help for Help

STOP

THP: You have successfully
opted out.

  Text Message 



**2:43** ... LTE 🔋

‹ 20     👤     ⓘ

945-52

> STOP

THP: You have successfully opted out.
You will not receive messages from Total Home Protection.
THP HELP for Help

**Sat, Nov 30,** 9:30 AM

BLACK FRIDAY SALE!
Lowest Rates of 2019 on ALL HOME WARRANTY PLANS. Call 844-537-6476 or http://bit.ly/2KUyjXy.
STOP to end. Help for Help

**Mon, Dec 2,** 10:42 AM

CYBER MONDAY SALE!
Lowest Rates of 2019. $200 OFF ALL HOME WARRANTY PLANS + 2 MONTHS FREE.
Call 844-537-6476. STOP to end. Help for Help

    Text Message   



**2:43**  LTE

20  945-52  ⓘ

Sat, Nov 30, 9:30 AM

BLACK FRIDAY SALE!
Lowest Rates of 2019 on
ALL HOME WARRANTY
PLANS. Call 844-537-6476
or http://bit.ly/2KUyjXy.
STOP to end. Help for Help

Mon, Dec 2, 10:42 AM

CYBER MONDAY SALE!
Lowest Rates of 2019. $200
OFF ALL HOME WARRANTY
PLANS + 2 MONTHS FREE.
Call 844-537-6476. STOP
to end. Help for Help

STOP

THP: You have successfully
opted out.
You will not receive
messages from Total Home
Protection.
THP HELP for Help

  Text Message 



2:36     LTE

‹ 19

945-52 ›

Call 844-537-6476. STOP to end. Help for Help

STOP

THP: You have successfully opted out.
You will not receive messages from Total Home Protection.
THP HELP for Help

Today 12:04 PM

Never pay for covered home repairs again! SAVE UP TO 45% OFF THP HOME WARRANTY PLANS. Call 866-896-2715. Reply STOP to end or HELP for help.

Never pay for covered home repairs again! SAVE UP TO 45% OFF HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or HELP for help.

Text Message





**3:36** LTE

19

945-52 ›

Today 12:04 PM

Never pay for covered home repairs again! SAVE UP TO 45% OFF THP HOME WARRANTY PLANS. Call 866-896-2715. Reply STOP to end or HELP for help.

Never pay for covered home repairs again! SAVE UP TO 45% OFF HOME WARRANTY PLANS. Call 844-537-6476. Reply STOP to end or HELP for help.

Today 3:35 PM

STOP

THP: You have successfully opted out.
You will not receive messages from Total Home Protection.
THP HELP for Help

Text Message



38.     By sending unauthorized telemarketing text message calls as alleged herein, especially after consumers like Plaintiff request that they "STOP," THP has caused consumers actual harm in the form of annoyance, nuisance, and invasions of their statutory and common law rights to privacy.

39.     The text messages also interrupted, disturbed and interfered with Plaintiff's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Plaintiff's phone.

40.     In the present case, a consumer could be subjected to many unsolicited text messages, and continuous, repeated invasions of privacy, as THP simply ignores opt out requests that it receives and continues to send messages after explicit requests that they "STOP."

41.     To redress these injuries, Plaintiff, on behalf of himself and two Classes of similarly situated individuals defined below, brings this suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cellular telephones.

42.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized text-messaging activities and an award of statutory damages to the Class members, together with costs, pre- and post-judgment interest, and reasonable attorneys' fees.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following two Classes:

**Stop Call Class**: All persons in the United States from four years prior to the filing of the Complaint in the instant action who: (1) having never executed a home service contract with Defendant, (2) Defendant, or a third person acting on behalf of Defendant, sent messages from Defendant's shortcode; (3) to the person's cellular telephone number; (4) for the same reason Defendant caused text messages to be sent to Plaintiff Wigod; (5) after the person replied "STOP" or with a substantially similar command.

**DNC Registry Class**: All persons in the United States who, from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant, or a third person acting on behalf of Defendant, sent at least two text messages within any 12-month period (2) to the person's cellphone; (3) where the cellphone number

had been listed on the National Do Not Call Registry for at least thirty days; (4) for the same purpose as text messages were sent to Wigod; (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call Wigod, and (6) where the Person received at least one text message more than thirty (30) days after responding STOP or with a substantially similar command.

44.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) the legal representatives, successors, and assignees of any such excluded persons; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel.

45.     Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

46.     **Numerosity:** The exact number of members in each of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent automated text messages to thousands of consumers who fall into the definition of each Class. Members of the Classes can be identified through reference to Defendant's records.

47.     **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically failed to honor STOP or similar requests;

16

(c)     Whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Stop Class;

(d)     Whether, for the members of the DNC Registry Class, Defendant systemically sent text messages to cellphone numbers listed on the National Do Not Call registry more than thirty (30) days after the person had requested STOP or with a similar command, and

(e)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

48.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendant's uniform wrongful conduct.

49.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions. Neither Plaintiff nor his counsel has interests adverse, antagonistic to, or in conflict with those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so.

50.     **Appropriateness:** This case is also appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of each Class and making final class-wide injunctive relief appropriate.

51.     Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by

Defendant's actions. It would be much more difficult for the individual Class members to obtain effective relief from Defendant's misconduct.

52.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the Stop Call Class)**

53.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54.     Defendant THP and/or its agents transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

55.     The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, stored and dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

56.     These text messages were stored and sent *en masse* and without the consent of the Plaintiff and other members of the Stop Call Class to receive such text message marketing spam.

57.     Plaintiff never entered into any contract with Defendant of any kind and never provided Defendant with prior express consent to send him autodialed text messages. Plaintiff never purchased a home service contract, home warranty, or any other product from Defendant.

58.     Nevertheless, to the extent Defendant is able to show any prior express consent at all, that prior express consent was expressly revoked by Plaintiff and the Stop Call Class members when they responded STOP. By responding with the common SMS codes to opt-out of

further communications, such as "STOP," "REMOVE," "OPT OUT," "END," "CANCEL," etc., each class member communicated his or her unambiguous intent to revoke any such consent.

59.     Plaintiff and the Stop Call Class members expressly requested that Defendant THP no longer send text messages to them, after which Defendant failed to honor the requests and failed to place Plaintiff and members of the Class on Defendant's internal do-not-call list.

60.     The text messages to Plaintiff and the Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP."

61.     A STOP message is a clear revocation of any prior consent that may have been provided by any class member. No prior express consent allowed Defendant to continue text messaging after the consumers said STOP. In fact, Defendant's text messages expressly informed consumers that they could end the transmission of such messages by responding STOP.

62.     Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

63.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Stop Call Class are each entitled to, under Section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of the TCPA.

64.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Stop Call Class.

65.     Plaintiff and the Stop Call Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

<u>SECOND CAUSE OF ACTION</u>
**Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
(On behalf of Plaintiff and the DNC Registry Class)**

66.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

67.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy and their right to avoid receiving telephone solicitation to which they object.

68.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

69.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[2]

70.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

---

[2] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

71.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations to telephone subscribers like the Plaintiff and the DNC Registry Class members who registered their respective cellphone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3), yet Defendant called them multiple times during any given 12-month period.

72.     Defendant made multiple unsolicited text message calls to Plaintiff and the other members of the DNC Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the DNC Registry Class never provided any form of consent to receive telephone calls from Defendant, and Defendant does not have a current record of consent to place telemarketing calls to them.

73.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Registry Class received more than one text message call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Registry Class members suffered actual harm and, under 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

74.     Defendant violated 47 C.F.R. § 64.1200(d) by failing to have a written do not call policy, by failing to train its personnel involved in telemarketing regarding the existence and use of any such do not call policy, by failing to accurately record do not call requests internally, and by calling Plaintiff and others more than thirty (30) days after receiving a request to stop calling.

75.     Wigod had been requesting that Defendant STOP calling him since at least November 8, 2019. Despite this, Defendant caused at least two text messages to be sent to Plaintiff Wigod on January 9, 2020—which was well after December 8, 2019 (which, in turn, was thirty (30) days after the November 8, 2019 stop request). As such, Defendant plainly ignored 47 C.F.R. § 64.1200(d)'s bar against texting someone more than thirty days after they requested not to be called or texted anymore.

76.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lee Wigod, on behalf of himself and the Classes, prays for the following relief:

A.      An order certifying the Classes as defined above, appointing Plaintiff Wigod as the representative of the Classes and appointing his counsel as Class Counsel;

B.      An award of actual monetary loss from such violations or statutory damages in the amount of five hundred dollars ($500.00) for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C.      An order declaring that Defendant's text messages, as set out above, violate the TCPA;

D.      A declaratory judgment that Defendant's telephone texting equipment constitutes an ATDS under the TCPA;

E.      A declaratory judgment that Defendant's failure to STOP texting persons whose phone numbers are on the National Do Not Call registry more than thirty (30) days after the person submitted a STOP request violates the TCPA;

F.      An injunction requiring Defendant to honor STOP requests and similar requests and otherwise protecting the interests of the Class;

G.      An award of pre- and post-judgment interest;

H.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

I.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: January 14, 2020          **LEE WIGOD**, individually and on behalf of all others similarly situated,

By:  /s/ Steven L. Woodrow
          One of Plaintiff's Attorneys

Gary D. McCallister
gdm@mccallisterlawgroup.com
McCallister Law Group, LLC
200 North LaSalle Street, Suite 2150
Chicago, IL 60601
(312) 345-0611

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Class